

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| EFFICIENT CHANNEL CODING, INC.<br>600 Safeguard Plaza, Suite 100<br>Brooklyn Heights, Ohio 44131-1892 | )<br>)<br>)<br>) | CASE NO. 1:04CV1607 |
| Plaintiff, | )<br>) | JUDGE |
| v. | )<br>) | MAGISTRATE JUDGE McHARGH |
| COMTECH AHA CORPORATION f/k/a<br>Advanced Hardware Architectures, Inc.<br>2345 NE Hopkins Court<br>Pullman, Washington 99163 | )<br>)<br>)<br>) | **COMPLAINT FOR BREACH OF<br>CONTRACT AND DECLARATORY<br>JUDGMENT** |
| Defendant. | )<br>) | |

For its Complaint against Defendant Comtech AHA Corporation ("Comtech AHA"), Plaintiff Efficient Channel Coding, Inc. ("ECC") alleges:

### PARTIES, JURISDICTION AND VENUE

1. ECC is an Ohio corporation with its principal place of business in Brooklyn Heights, Ohio.

2. Defendant Comtech AHA, on information and belief, is a Delaware corporation with its principal place of business in Pullman, Washington.

3. This action arises under contract, under the Federal Declaratory Judgment Act, Title 28 United States Code §§ 2201 and 2202, and under the Patent Laws of the United States, Title 35, United States Code §§ 101, et seq.

4. Subject matter jurisdiction is proper under 28 U.S.C. §§ 1331, 1332, 1338(a), and § 1367. Venue is proper under §§ 1391(a), (b) and (c).

5. Venue and personal jurisdiction are proper in this District.

6. The amount in controversy exceeds $75,000.

## FACTS COMMON TO ALL COUNTS

7. ECC is in the business of developing and producing software and hardware relating to digital communications, including software and hardware designed to increase the efficiency of digital communications in satellite, wireless and wireline communications systems.

8. On information and belief, Comtech AHA also develops and produces software and hardware designed to increase the efficiency of digital communications in various communication systems.

9. On or about June 30, 1997, ECC and Comtech AHA's predecessor, Advanced Hardware Architectures, Inc., entered into a Development and License Agreement (the "Agreement"), a copy of which is attached as Exhibit 1. The Agreement is governed by Ohio law. On information and belief, the Agreement has been assigned to Comtech AHA.

10. Pursuant to Section 5.1 of the Agreement, ECC granted to Comtech AHA a license to ECC's intellectual property rights in a specific method owned by ECC to decode digital communications, which license is exclusive in certain respects. That method is described in Exhibit A to the Agreement. Pursuant to Section 1.2 of the Agreement, Comtech AHA's exclusive license extends to any improvements in that licensed method.

11. The definition of Licensed Technology contained in Section 1.2 of the Agreement also includes "Intellectual Property Rights" incorporated therein, a defined term which, according to Section 1.3 of the Agreement, includes patents and patent applications. The

decoding method described in Exhibit A to the Agreement refers to a pending patent application covering the method, which matured into United States Patent 5,930,272 (the "'272 Patent").

12. Section 7.3 of the Agreement provides that Comtech AHA "will sell Licensed Products to ECC at the lowest price at which it sells such units to other third parties regardless of the volume purchased by ECC." "Licensed Products" are defined in Section 1.1 of the Agreement to include any software or hardware products incorporating the technology licensed by ECC to Comtech AHA. Nowhere does the Agreement place any restrictions on ECC with respect to the "Licensed Products" sold by Comtech AHA to ECC pursuant to Section 7.3, including ECC's right to resell such products on a standalone basis.

13. Pursuant to Section 7.3 of the Agreement, Comtech AHA has been selling to ECC in this Judicial District its AHA4501 and AHA4540 semiconductor chips that incorporate the decoding method described in Exhibit A of the Agreement. ECC began purchasing and incorporating the AHA4501 chips into certain of its products on or about January, 1999, and began purchasing and incorporating the AHA4540 chips into certain of its products on or about December, 2001.

14. Since about June, 2002, ECC also has resold the AHA4540 chips to ECC customers on a standalone basis. Comtech AHA has been aware of this practice.

15. On July 16, 2004, pursuant to Section 7.3 of the Agreement, ECC placed an order via e-mail with Comtech AHA for a certain quantity of AHA4540 chips. On July 19, 2004, Comtech AHA notified ECC via e-mail that it would not process ECC's July 16, 2004 order. Comtech AHA refused to process ECC's order because of "pending legal discussions between ECC and Comtech AHA."

16. Comtech AHA's refusal to sell AHA4540 chips to ECC, in breach of Section 7.3 of the Agreement, will preclude sales of certain ECC products and will require ECC

to redesign certain ECC products to incorporate one or more replacement chips from third parties. Such lost sales and redesign of certain ECC products will cost ECC in excess of $75,000.

17. In March, 2004, ECC began marketing a product named Advanced Turbo Product Code – Intellectual Property Core ("ATPC-IP"). ECC offers both hardware and software embodying the ATPC-IP product. The ATPC-IP product employs a proprietary method to decode encoded digital communications that is different from the method referred to in Exhibit A to the Agreement. The ATPC-IP method was invented by an ECC employee.

18. Comtech AHA, through a June 30, 2004 letter from its counsel, has wrongfully asserted that ECC's sales of the ATPC-IP product is a breach of the Agreement and has threatened to terminate the Agreement. Specifically, Comtech AHA alleges that the ATPC-IP product uses technology within the scope of Licensed Technology as defined in the Agreement. However, as set forth above, the ATPC-IP product uses a different proprietary decoding method than that described in Exhibit A of the Agreement. Comtech AHA also alleges that ECC has breached the Agreement by reselling the AHA4540 Chips purchased from Comtech AHA to customers on a standalone basis. As set forth above, however, there is no such prohibition in the Agreement.

19. Comtech AHA, by its actions and statements, is threatening to terminate ECC's license rights under Section 5.2 of the Agreement and thereby stop ECC from selling and marketing products including the ATPC-IP product, as well as seek damages from ECC. As a result, ECC's rights and obligations under the Agreement have been rendered uncertain, and it has been threatened with significant monetary harm.

## COUNT ONE

### (Comtech AHA's Breach Of The Agreement)

20.     ECC incorporates by reference paragraphs 1 - 18 of this Complaint.

21.     Comtech AHA's refusal to sell the AHA4540 Chip to ECC is a breach of Section 7.3 of the Agreement, which obligates Comtech AHA to sell Licensed Products to ECC.

22.     As a result of Comtech AHA's foregoing breach of the Agreement, ECC has been and/or will be damaged by an amount in excess of $75,000 to be proven at trial.

## COUNT TWO

### (Declaratory Judgment That ECC Has Not Breached The Agreement)

23.     ECC incorporates by reference paragraphs 1 - 21 of this Complaint.

24.     An actual controversy exists between ECC and Comtech AHA over the Agreement, leading Comtech AHA to assert that ECC has breached the Agreement. ECC is in reasonable apprehension that Comtech AHA will declare termination and commence suit alleging breach of contract.

25.     ECC is entitled to judgment declaring that ECC has not breached the Agreement.

## COUNT THREE

### (Declaratory Judgment Of Non-Infringement of the '272 Patent)

26.     ECC incorporates by reference Paras. 1 - 24 of this Complaint.

27.     The Licensed Technology under the Agreement includes that which is disclosed and claimed in the '272 patent. Comtech AHA's charge of breach amounts to an accusation of infringement of the '272 patent. ECC is in reasonable apprehension that Comtech AHA will declare termination and commence suit against ECC for alleged violation of its Licensed Technology, including infringement of the '272 patent.

28. An actual controversy exists between ECC and Comtech AHA over infringement of the '272 patent.

29. ECC is entitled to judgment declaring that ECC has not infringed the '272 patent.

WHEREFORE, ECC requests that this Court:

A. Order Comtech AHA to perform in accordance with Section 7.3 of the Agreement;

B. Award ECC damages for Comtech AHA's breach of Section 7.3 of the Agreement, in an amount to be proven at trial;

C. Declare that ECC has not breached the Agreement;

D. Declare that ECC has not infringed any claims of the '272 patent;

E. Grant judgment for ECC for its costs and attorneys fees, pursuant to Section 14.9 of the Agreement or other legal authority; and

F. Grant such other and further relief that this Court deems just and proper.

*Timothy J. O'Hearn*

Timothy J. O'Hearn (0025225)
JONES DAY
North Point, 901 Lakeside Avenue
Cleveland, Ohio 44114
Phone: (216) 586-3939
Fax: (216) 579-0212
tohearn@jonesday.com

Attorneys for Plaintiff Efficient Channel Coding, Inc.